**BAKER'S AID, A DIVISION OF M. RAUBVOGEL CO., INC.,**
**Plaintiff-Appellant,**

**v.**

**HUSSMANN FOODSERVICE COMPANY and Hussmann Corporation,**
**Defendants-Appellees.**

**No. 1131, Docket 87–7385.**

United States Court of Appeals,
Second Circuit.

Argued June 10, 1987.

Decided Oct. 1, 1987.

**14**

Joseph P. Zammit (Reavis & McGrath, New York City, of counsel, Douglas P. Catalano, Robert R. Salman, on brief), for plaintiff-appellant.

Robert I. Edlitz (Gubman Sitomer Goldfaden & Edlitz P.C., New York City, of counsel, Harvey N. Goldstein, Michael R. Klekman, on brief), for defendants-appellees.

Before VAN GRAAFEILAND, KEARSE, and MAHONEY, Circuit Judges.

PER CURIAM:

Plaintiff brings this expedited appeal from a Memorandum and Order of the United States District Court for the Eastern District of New York (McLaughlin, J.) denying its motion for a preliminary injunction enforcing a noncompetition agreement.

The court found that plaintiff was likely to succeed on the merits, but had not shown that it would suffer irreparable harm if the injunction was not issued. This is a diversity action to which New York law is applicable.

Plaintiff Baker's Aid, a division of M. Raubvogel Co.[1], is a major retailer of rack and deck ovens [2] to the supermarket industry. Plaintiff's ovens had been manufactured for years by AB Svenska Bakugnsfabriken Fristad Sweden ("Sveba"), a Swedish corporation. Some of the features of the ovens had been altered over time due to significant input from plaintiff. Because of problems with the Sveba source of supply, plaintiff entered into a manufacturing agreement dated June 11, 1985 with Toastmaster, Inc. (the "Agreement"), an affiliate of BIH Food Service Inc. ("BIH"). BIH guaranteed the performance of Toastmaster's obligations under the Agreement. BIH is now a subsidiary of defendant Hussman Food Service Co. ("HFC"), which in turn is a subsidiary of defendant Hussman Corporation ("Hussman"). Plaintiff sent Toastmaster four Sveba-manufactured ovens to reverse engineer. After significant assistance from plaintiff, Toastmaster came up with an acceptable rack oven. The Toastmaster name did not appear on any of the ovens. The Toastmaster never produced a deck oven acceptable to plaintiff prior to termination of the Agreement.

The Agreement provided that: the specifications for the ovens could be purchased by plaintiff for $75,000, and plaintiff would automatically acquire the specifications upon purchasing one million dollars worth of ovens from Toastmaster; the information and know-how derived from the specifications were trade secrets and could not be disclosed to third parties without writ-

---

1. A division of a corporation is not a legal entity with capacity to bring suit, but this issue has not been presented to us, and it is in any event unlikely that it would be dispositive. *See American Jerex Co. v. Universal Aluminum Extrusions, Inc.,* 340 F.Supp. 524, 527–28 (E.D.N.Y. 1972); *Orange County Publications Div. of Ottoway Newspapers-Radio, Inc. v. White,* 55 Misc.2d 42, 43, 284 N.Y.S.2d 293, 296 (1967).

2. Rack and deck ovens are sold to volume-feeding facilities such a supermarket chains, restaurants, prisons and hospitals. A rack oven consists of a single heating chamber. Objects are placed on rotating racks and are heated by fanned air. A deck oven consists of several smaller heating chambers that may be set at different temperatures. Objects are placed in a given chamber and remain stationary throughout the heating process. Heat passes through the bottom of each chamber.

ten authorization from plaintiff; Toastmaster would not for ten years subsequent to the termination of the Agreement solicit, distribute, manufacture, sell, or cause to be sold to plaintiff's customers any rack ovens or any deck oven based upon the specifications, nor sell, distribute, solicit, manufacture, or cause to be manufactured rack ovens for sale or distribution in the United States or Canada. The Agreement also provided that, in the event of breach, money damages would be an inadequate remedy and the breaching party could be enjoined from disclosing or using confidential material encompassed by the Agreement.

HFC acquired BIH and Toastmaster in October, 1985 and acknowledged assumption of BIH's obligations in July, 1986. Plaintiff acquired the specifications after it purchased one million dollars worth of ovens from Toastmaster. Shortly thereafter, when informed of a 32% price increase, plaintiff refused to order any more ovens from Toastmaster and reestablished its relationship with Sveba. Toastmaster now makes ovens for Hussman, which is ready to enter the market in competition with plaintiff. Plaintiff sought a preliminary injunction to enforce the Agreement against HFC and Hussman.

On the record before it, the district court found that the know-how imparted to Toastmaster by plaintiff and incorporated into the specifications did not constitute trade secrets, irrespective of the terms of the Agreement. The district court further found that although plaintiff was likely to prevail on the merits, it had not shown a likelihood of suffering irreparable harm, due, *inter alia*, to its strong position in a highly competitive market and the quantifiable nature of any loss it might suffer because of Hussman's entry into the market.

In order to obtain a preliminary injunction in this Circuit, the moving party must establish (1) irreparable harm and (2) either (a) a likelihood of success on the merits, or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in its favor. *E.g., Sperry*

*Int'l Trade, Inc. v. Gov't of Israel*, 670 F.2d 8, 11 (2d Cir.1982); *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir.1979) (per curiam). We will reverse the grant or denial of a preliminary injunction only upon a clear showing that the district court abused its discretion. *Jack Kahn Music Co. v. Baldwin Piano & Organ Co.*, 604 F.2d 755, 758 (2d Cir.1979). A failure to consider relevant factors or to apply the proper legal standard constitutes such an abuse. *Stormy Clime Ltd. v. Progroup, Inc.*, 809 F.2d 971, 973–74 (2d Cir. 1987). The question whether a preliminary injunction should be granted is generally one of federal law even in diversity actions, though state law issues are sometimes relevant to the decision to grant or deny. *Continental Group, Inc. v. Amoco Chem. Corp.*, 614 F.2d 351, 357 n. 10 (3d Cir.1980); *Systems Operations, Inc. v. Scientific Games Development Corp.*, 555 F.2d 1131, 1141 (3d Cir.1977).

■ We find no abuse of the district court's discretion in its determination, on the record as it now stands, that plaintiff had made an insufficient showing that what was usurped was a trade secret under New York law. *See Eagle Comtronics, Inc. v. Pico, Inc.*, 89 A.D.2d 803, 803–04, 453 N.Y.S.2d 470, 472 (4th Dep't 1982). This determination adversely affected plaintiff's burden of establishing irreparable injury.

■ Plaintiff focuses, however, on the court's finding that it is likely to prevail on the merits, and argues that this calls for an automatic assumption of irreparable harm. Plaintiff points to no authority in support of the proposition that irreparable harm must inevitably be assumed in breach of covenant cases. Though courts often issue preliminary injunctions when it appears likely that the plaintiff will prevail in covenant-not-to-compete cases, this is not an automatic process, but instead depends upon the factual particulars in each case. *See generally Continental Group, Inc. v. Amoco Chem. Corp.*, 614 F.2d 351 (3d Cir. 1980); *Mixing Equipment Co. v. Philadelphia Gear, Inc.*, 436 F.2d 1308 (3d Cir. 1971); *Business Intelligence Services, Inc.*

*v. Hudson,* 580 F.Supp. 1068 (S.D.N.Y. 1984); *Continental Group, Inc. v. Kinsley,* 422 F.Supp. 838 (D.Conn.1976).

▪ We are especially loath to find an abuse of discretion in the instant situation, given the district court's factual findings and plaintiff's failure to produce any evidence of irreparable harm, other than the conclusory statement of its president that Baker's Aid customers consider the Baker's Aid ovens to be superior and unique.[3] We also agree with the district court that the contractual language declaring money damages inadequate in the event of a breach does not control the question whether preliminary injunctive relief is appropriate.

▪ Finally, we reject plaintiff's argument that the sale of Hussman ovens entails a loss of good will for Baker's Aid. Although the Toastmaster-Hussman ovens and the Toastmaster-Baker's Aid ovens are similar, plaintiff conceded at oral argument that there has been no attempt on Hussman's part to pass off or confuse consumers with respect to the products. The Hussman brand name is clearly marked on the Hussman ovens. Moreover, since the Toastmaster name never appeared on any Baker's Aid ovens, there is no association in the customer's mind between Toastmaster and Baker's Aid which would tend to cause consumer confusion now that Toastmaster is manufacturing ovens for Hussman.

▪ Plaintiff originally sought to prevent Hussman from displaying its ovens at a supermarket trade show held in Chicago on May 3–6, 1987. Hussman had sold no rack or deck ovens as of June 10, 1987, the date of oral argument. No trial date had then been set, but both sides have indicated an ability to go to trial within three weeks of the deposition of Sveba's president. We trust that all parties will cooperate in arranging for this deposition and proceeding to trial at the earliest possible date, espe-

cially in light of the district court's conclusion that plaintiff is likely to prevail on the merits. *See Rapco Foam, Inc. v. Scientific Applications, Inc.,* 479 F.Supp. 1027, 1032–33 (S.D.N.Y.1979).

The order of the trial court denying plaintiff's request for a preliminary injunction is affirmed.

---

**3.** Plaintiff also asserted that if Hussman is permitted to compete, with its large financial resources, it would put plaintiff out of business. The district court rejected these apprehensions "as of today," and refused a preliminary injunction "[a]t this point," while conceding that such

a threat would clearly constitute irreparable harm. Indeed, as the district court stated earlier, irreparable injury is any "harm which cannot be repaired" (citing *Studebaker Corp. v. Gittlin,* 360 F.2d 692, 698 (2d Cir.1966)).