**CITIBANK, N.A., Plaintiff,**

v.

**The SINGER COMPANY, Defendant.**

**No. 88 Civ. 2600 (RWS).**

United States District Court,
S.D. New York.

April 20, 1988.

Shearman & Sterling, New York City, for plaintiff; Mark P. Zimmett, Kenneth A. Freeling, of counsel.

Fried, Frank, Harris, Shriver & Jacobson, New York City, for defendant; Terrence A. Corrigan, Cory Mitchell Gray, Jeanine Jiganti, of counsel.

## OPINION

SWEET, District Judge.

Plaintiff Citibank, N.A. ("Citibank") has moved by order to show cause for mandatory preliminary injunctive relief pursuant to Rule 65, Fed.R.Civ.P., against defendant The Singer Company ("Singer"). Citibank seeks to require Singer to deposit additional collateral in the amount of $10 million. Upon the findings and conclusions set forth below, the requested injunction will issue.

### Prior Proceedings

The motion for preliminary injunctive relief was brought on by order to show cause issued on April 13, 1988 and made returnable on April 15, 1988. On the return date Singer proposed to offer later that day a commitment letter from the Bank of Nova Scotia ("Scotia Bank") to the effect that upon the completion of certain merger transactions on April 18, Scotia Bank would supply Citibank with a $10 million letter of credit in form satisfactory to constitute the requested additional collateral.

Singer was unable to produce the proposed letter, representing that the production of such a letter outside the proposed financing and merger contemplated for April 18 presented time consuming administrative complications. Upon the representation by Singer that the proposed refinancing and merger would take place on April 18, the Citibank motion was adjourned to the late afternoon of that date.

On April 18 the proposed refinancing and merger did not close as anticipated for complex reasons known only to the corporate wizards enmeshed in the complicated closing. It was again represented that the closing was expected to be completed on the following day, or at the latest, on Wednesday. No additional facts, other than the obvious passage of time, having been presented by Citibank, the motion was again adjourned to the late afternoon of April 20 with the provision that no further adjournments would be granted.

On this date, Singer advised that the proposed refinancing and merger had not been completed, no additional collateral was presented to Citibank, and this opinion was issued.

### Facts

At Singer's request, in the period from May through December 1987 Citibank approved the issuance of the following outstanding irrevocable letters of credit to secure the performance of Singer's obligations under certain contracts (the "Letters of Credit"):

| Letter of Credit No | Name of Letter of Credit Beneficiary | Date Letter of Credit Expires | Amount Available To Be Drawn Under Letter of Credit (Expressed in U.S. Dollars Except Where Otherwise Indicated) |
|---|---|---|---|
| 30001384 | Royal Norwegian Air Force, Air Material Command, Procurement Div., Norway | 4/30/88 | $2,387,686 |
| 30000711 | Rockwell Systems Australia Pty. Ltd., Australia | 10/18/90 | A $2,786,292 (Approx. US $2,015,325) |
| 30000710 | Rockwell Systems Australia Pty. Ltd., Australia | 10/31/88 | A $5,572,583 (Approx. US $4,030,649) |
| 30000701 | Government of Israel, Ministry of Defense, Mission to the United States | 12/1/88 | $1,880,627 |
| 30000067 | Sui Northern Gas Pipelines Ltd., Lahore, Pakistan | 9/30/89 | $ 44,100 |

| Letter of Credit No | Name of Letter of Credit Beneficiary | Date Letter of Credit Expires | Amount Available To Be Drawn Under Letter of Credit (Expressed in U.S. Dollars Except Where Otherwise Indicated) |
|---|---|---|---|
| 30001066 | Sui Northern Gas Pipelines Ltd., Lahore, Pakistan | 2/28/90 | $ 8,400 |

Citibank is entitled to a thirty day notice of an intention to draw down these Letters of Credit and as far as this record establishes, no such notice has been given.

Citibank's approval of the Letters of Credit was based upon a number of factors. Citibank was familiar with the Singer senior management team, and Singer had an established track record as a responsible borrower that not only possessed the ability, but also the willingness, to pay its obligations in a timely manner. Singer's net worth was substantial, with a debt to equity ratio of approximately .87 to 1 as of December 31, 1987, its cash flow and working capital seemed satisfactory, and its financial trends had been positive.

Each Letter of Credit application and agreement contains the following provision:

If at any time and from time to time ... [Citibank] require[s] collateral (or additional collateral), ... [Singer] will, on demand, assign and deliver to ... [Citibank] as security for any and all obligations of ... [Singer] now or hereafter existing under this Agreement, collateral of a type and value satisfactory to ... [Citibank] or make such cash payment as ... [Citibank] may require.

In February 1988, Paul Bilzerian ("Bilzerian") acquired Singer by means of a tender offer which contemplated the merger of Bilzerian's acquisition vehicle, Singer Acquisition Co., into Singer on April 18, 1988. As of December 31, 1987, Singer had shareholders equity of approximately $633 million. As a consequence of the merger, Singer will assume substantial debt incurred by Singer Acquisition Co. in the tender offer, approximately $1 billion.

Bilzerian has announced plans to sell Singer's aerospace/defense electronics division, the division which accounts for up to 80 percent of Singer's revenues and the performance of which is secured by four of the six Letters of Credit. The sale of these divisions has raised a doubt on Citibank's part as to whether the remaining cash flow will be sufficient to service the remaining debt obligations as well as to cover the cost of ongoing operations and whether as a consequence Singer's inability to perform could lead to drawings under the Letters of Credit and an inability or unwillingness to perform the underlying contracts to reimburse any Citibank's payments under the Letters of Credit. Singer notes that Bilzerian and Citicorp have been previously involved in heated litigation. *See Bilzerian Partners Series A v. Pay 'n Pak, et al.,* C.A. No. 87–1093R (W.D.Wash.); *Pay 'n Pak v. Bilzerian, et al.,* C.A. No. 87–925C (W.D.Wash.).

In light of these considerations, Citibank advised Singer that it desired to be repaid under the existing credit facilities that it had provided to Singer. Thus, in February 1988, Citibank, together with a group of other lender banks, unanimously elected to be paid out by Singer under an existing $300 million revolving credit facility. Also in February 1988, Citibank demanded to be paid out by Singer under a $20.4 million sale-leaseback credit agreement. These demands were met by Singer.

On February 12, 1988 Citibank requested cash collateral from Singer in accordance with its rights under the Letter of Credit provision cited above. Singer responded by letter dated February 26, 1988, stating that it would not provide the cash collateral Citibank requested. Similar requests were refused on March 3, 1988 and on March 11, 1988. On March 14, 1988 Citibank formally demanded cash collateral under the Letters of Credit agreements. To date the demand for additional collateral has been rejected by Singer.

In view of this rejection, the failure to present additional collateral, and the

changed circumstances, Citibank's demand appears *prima facie* to have been made in good faith. Singer's pre-merger payments, and Citibank's prior exercise of its rights involving Bilzerian, fail to constitute a preponderance of evidence to the contrary.

*Conclusions*

**The Standard for Preliminary Injunctive Relief**

The standard for a preliminary injunction under Fed.R.Civ.P. 65 in this Circuit requires a "showing of (a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardship tipping decidedly toward the party requesting the preliminary relief." *Jackson Dairy, Inc. v. H.P. Hood & Sons*, 596 F.2d 70, 72 (2d Cir.1979).

■ Citibank has shown that it is likely to succeed on the merits of its claim for security. The parties' agreement clearly provides that Citibank has a right to cash collateral on demand, and Singer has not contended that the Letters of Credit provide otherwise. Further, its demand is enforceable if it is made in good faith. N.Y. U.C.C. § 1–208. Given the facts found above, the burden to establish a lack of good faith has not been met by Singer. " 'Good faith' means honesty in fact...." N.Y.U.C.C. § 1–201(19). "The burden of establishing lack of good faith is on the ... [defendant]." N.Y.U.C.C. § 1–208:

> [T]he Code rule ... [places] the burden of establishing lack of good faith [on the party against whom the demand for collateral has been exercised] ... [T]here has ... been an indication [in other Code cases] that the mortgagee must have reasonable grounds for feeling insecure. The Code's enactment would remove the ambiguity.

New York Notation to N.Y.U.C.C. § 1–208 (citations omitted). The test of good faith under UCC § 1–208 "is a matter of the creditor's actual mental state and this is not negatived by showing there is no basis for the creditor's belief ... and it is immaterial whether the information upon which the creditor based his determination was in fact not true...." *Blaine v. G.M.A.C.*, 82

Misc.2d 653, 370 N.Y.S.2d 323 (Monroe County Ct.1975) (citations omitted); *Canterbury Realty & Equip. Corp. v. Poughkeepsie Savings Bank*, 135 A.D.2d 102, 534 N.Y.S.2d 531 (3d Dept.1988) (bank's decision to accelerate loan under clause that permitted acceleration when bank deemed itself insecure is not arbitrary and subject to UCC § 1–208 requirement of reasonableness). As found above, Citibank has acted in good faith to require Singer to provide additional collateral.

**Irreparable Injury**

■ It is the first line of defense in *Jackson Dairy, Inc., supra*, that Singer presses to defeat Citibank's motion—the absence of irreparable injury. Singer notes that the Letters of Credit have not been presented, that no notice to present the Letters has been sent, that Singer has made substantial premerger payments to Citibank's benefit, and that Citibank has not demonstrated that it will suffer damage which cannot be made whole by a money judgment at some future time.

Singer relies heavily on *KMW International v. Chase Manhattan Bank, N.A.*, 606 F.2d 10 (2d Cir.1979) where imminent harm relating to letter of credit payments was alleged, and the Second Circuit vacated a preliminary injunction stating:

> In the first place, KMW has not shown that it will suffer possible economic injury absent the injunction ... This circuit does not recognize as irreparable harm a loss that may be adequately redressed by a monetary award ... [Moreover] *this damage is purely conjectural.* At the time the preliminary injunction was granted, *Chase had received no demand for payment whatsoever....* Since KMW's damages are financial in nature or, at best, of a speculative quality, a preliminary injunction should not have issued.

606 F.2d at 14–15 (emphasis supplied; citations omitted).

Singer also notes Citibank's delay of over two months in seeking enforcement of its "rights" regarding collateral strongly suggests that no imminent injury is likely to occur, citing *Citibank, N.A. v. City Trust*, 756 F.2d 273 (2d Cir.1985).

In *KMW, supra,* the Court of Appeals vacated an injunction which shifted the burden of risk that the parties had contracted to assume. The Court of Appeals found "[s]uch a shifting of risk ... unwarranted...." *Id.* at 15. In this case, failure to enter the injunction would shift the risk that the parties contracted to assume.

The issue presented here is whether a party seeking appropriately to enforce a right to additional collateral can obtain preliminary relief to enforce its bargain and whether the failure to comply with the security arrangements which underlie irrevocable letters of credit constitutes the irreparable injury requirement of *Jackson Dairy, Inc.* Despite the excellence of counsel for both sides, no direct authority has been presented. *SEC v. American Board of Trade, Inc.,* 830 F.2d 431, 438 (2d Cir.1987), *aff'd,* 645 F.Supp. 1047 (S.D.N.Y. 1986) (upholding a preliminary injunction against the dissipation of assets that were being depleted and the preservation of which was necessary to secure noteholders' claims), and *In re Feit & Drexler, Inc.,* 760 F.2d 406, 416 (2d Cir.1985) (preliminary injunction issued to prevent a damage judgment from being frustrated), cited by Citibank, come close and stand for the proposition that a claimant entitled to protection need not wait for a trial on the merits to protect its rights.

Under the facts found here, given the nature of the rights and commercial instruments involved, irreparable injury has been established, and Citibank is entitled to enforce its rights now on a preliminary basis without being forced to wait for a trial on the merits.

No showing has been made of any injury to be suffered by Singer in the event that this preliminary relief is vacated. Indeed, its position has been that the relief is unnecessary, given the imminence of the availability of the additional collateral. Under such circumstances, security in the amount of $50,000 would seem appropriate, although both sides are granted leave to make a further application with respect to security.

An order has been noticed with respect to the requested relief and will be signed, filed and stayed today until noon on Friday, April 22, 1988 to permit the parties to make a further application for appellate review.

IT IS SO ORDERED.