FIREMEN'S INSURANCE COMPANY
OF NEWARK, NEW JERSEY,
Plaintiff,

v.

Robert F. KEATING, Ellen N. Keating, Eugene F. Loro and Ruth E. Loro Trust, Ronald D. Mercaldo, Barbara R. Mercaldo, Delores M. O'Gorman, Rae Pyper and John N. Sakellariadis, Defendants.

FIREMEN'S INSURANCE COMPANY
OF NEWARK, NEW JERSEY,
Plaintiff,

v.

Ian BROWN, Defendant.

FIREMEN'S INSURANCE COMPANY
OF NEWARK, NEW JERSEY,
Plaintiff,

v.

Albert H. STONE and Cynthia A. Stone, Defendants.

FIREMEN'S INSURANCE COMPANY
OF NEWARK, NEW JERSEY,
Plaintiff,

v.

Joseph A. HENDRICH, Defendant.

FIREMEN'S INSURANCE COMPANY
OF NEWARK, NEW JERSEY,
Plaintiff,

v.

Reva Butler HOFMANN, Defendant.

FIREMEN'S INSURANCE COMPANY
OF NEWARK, NEW JERSEY,
Plaintiff,

v.

Warren CHISUM, Defendant.

FIREMEN'S INSURANCE COMPANY
OF NEWARK, NEW JERSEY,
Plaintiff,

v.

SMITH & LEANY PARTNERSHIP,
Don Smith and Lynn Leany,
Defendants.

FIREMEN'S INSURANCE COMPANY
OF NEWARK, NEW JERSEY,
Plaintiff,

v.

Joel C. ALSAKER, Bruce Babcock, Jr., Kenneth G. Braun, Paul F. Depond, Carolina A. Depond, Hassan Fakouraghai, Karen L. Fakouraghai, Robert I. Lewy, Henry K. Lui, John E. Metzger, R. Hamilton Morrison, Patricia Sipl a/k/a Patricia Sipl–Gannon, William J. Gannon, David C. Smith Family Trust, David E. Sponsler, Stanford Builders Supply, Inc., Don R. Wangberg and Bonnie J. Wangberg, Defendants.

FIREMEN'S INSURANCE COMPANY
OF NEWARK, NEW JERSEY,
Plaintiff,

v.

Edward L. CAHILL, Edward L. Carter, Linda S. Carter, George Chimples, Carl Forsyth, Velma Forsyth, Marc S. Hermelin, Linda Hermelin, David H. Jaffe, Aram H. Keith, Edward S. Kraemer, Richard L. Monteith, Char-

lotte B. Monteith, Gary S. Nachman, Victor A. Nix, Jr., Ken O'Gorman, Jr., Floyd Stuart Reid, Lawrence S. Rich, William J. Sahl, Mayer A. Sarfan, Sidney M. Seltzer, George W. White and J.P. Wilson, Defendants.

Nos. 90 Civ. 1076 (PKL), 90 Civ. 1676 (PKL), 90 Civ. 1677 (PKL), 90 Civ. 1678 (PKL), 90 Civ. 1753 (PKL), 90 Civ. 1754 (PKL), 90 Civ. 1809 (PKL), 90 Civ. 6164 (PKL) and 90 Civ. 6288 (PKL).

United States District Court,
S.D. New York.

Dec. 21, 1990.

Hart & Hume, New York City; Mark S. Gamell, of counsel, for plaintiff.

Beigel & Sandler, New York City; Patricia C. Hayashi, of counsel and Barry H. Hart, Ltd., Phoenix, Ariz. (Barry H. Hart, of counsel), and Kelly & Roth, New York City (William H. Roth, of counsel), for defendants.

## ORDER AND OPINION

LEISURE, District Judge:

These nine related actions arise from purchases by defendants of investments in a limited partnership. Plaintiff Firemen's Insurance Company of Newark, New Jersey ("plaintiff" or "Firemen's"), has now moved for an order seeking preliminary injunctive relief. For the reasons stated below, plaintiff's motion is denied.[1]

## BACKGROUND

On November 18, 1985, the promoters of CSH–I Hotel Limited Partnership (the "Partnership"), a Texas limited partnership, began an offering of $20,000,000 in limited partnership interests in the Partnership. Investors could purchase units in the Partnership either with a single cash payment, or by making a small cash down payment and executing an installment promissory note. In cases in which the latter method of payment was employed, a surety bond would be issued, guaranteeing, in effect, the payments due under the note. The investor was then required to execute an "Indemnification and Pledge Agreement" ("Indemnification Agreement") in favor of the surety.

When the offering failed to sell a sufficient number of partnership units, the promoters arranged to borrow approximately $19,360,000 from Contitrade Services Corporation ("Contitrade"). This amount was required to close escrow on certain hotel properties throughout the United States that the promoters were obligated to purchase. The promoters and Contitrade then arranged for plaintiff to provide the necessary surety bonds, the loan from Contitrade to the Partnership collateralized by the investors' promissory notes, which were assigned to Contitrade, and by plaintiff's accompanying surety bonds, in which Contitrade was named the obligee.

Between January and May 1986, the defendants in these actions purchased units of the Partnership. These investments were purchased using the installment method, and thus each defendant executed a promissory note in favor of the Partnership, an Indemnification Agreement in fa-

---

**1.** This Order and Opinion shall constitute the Court's findings of facts and conclusions of law, as required by Fed.R.Civ.P. 52(a) and 65(d).

vor of plaintiff,[2] and plaintiff issued a surety bond on behalf of each defendant. After Contitrade was assigned the Partnership's rights under the notes, Contitrade in turn assigned both the notes and plaintiff's surety bonds to Manufacturer's Hanover Trust Company ("MHT"), as agent for Massachusetts Mutual Life Insurance Company.

The Partnership filed for bankruptcy in June 1989, and defendants have refused—since October 1, 1989—to make payments on the notes, alleging that their investments in the Partnership were induced by misrepresentation and fraud.[3] Consequently, defendants are now in default on those notes, and MHT has demanded and received payment from plaintiff pursuant to plaintiff's surety bonds. Plaintiff first made such payments on or about December 1, 1989, and has made additional payments to MHT since then, totalling at least $400,000. The next round of payments are due from plaintiff to MHT on December 28, 1990. Defendants, however, have refused to make payments to plaintiff pursuant to the Indemnification Agreements, asserting that those agreements, like the notes, are void and unenforceable as a matter of law. Plaintiff commenced the first of the above-captioned actions on February 16, 1990, seeking to compel defendants to comply with the terms of the Indemnification Agreements. Plaintiff originally informed the Court, at a pretrial conference in June

1990, that it intended to move for summary judgment in these actions. Plaintiff thereafter chose not to move for summary judgment, and, instead, on August 27, 1990, decided to move for an order (1) granting a preliminary injunction requiring each defendant to comply with a cash collateral clause in the Indemnification Agreement between plaintiff and each defendant by posting cash collateral with plaintiff, or, in the alternative, (2) granting a preliminary injunction enforcing plaintiff's equitable rights as surety to exoneration and *quia timet*, by requiring each defendant to deposit either with plaintiff or with the Court that sum for which plaintiff is still at risk with respect to each defendant. Plaintiff's motion became fully submitted on October 22, 1990.[4] By agreement of the parties, consideration of this motion has been held in abeyance pending decision by the Court of defendants' motions to dismiss these actions.[5]

## DISCUSSION

"[A] preliminary injunction is an extraordinary remedy that should not be granted as a routine matter." *JSG Trading Corp. v. Tray–Wrap, Inc.*, 917 F.2d 75, 80 (2d Cir.1990); *see also Patton v. Dole*, 806 F.2d 24, 28 (2d Cir.1986); *Medical Society of New York v. Toia*, 560 F.2d 535, 538 (2d Cir.1977) (preliminary injunction is "an extraordinary and drastic remedy which

2. The Indemnification Agreement contained a "cash collateral clause," pursuant to which each defendant agreed to post cash collateral with plaintiff in the amount of any unpaid note obligations—both past and future—if he or she should default on any payment of principle or interest due under his or her note. This clause is discussed in greater detail, *infra.*

3. Two actions have been commenced by various investors in the Partnership against the promoters and others involved in creating the Partnership, *Rawlings v. Prudential–Bache Properties, Inc.*, (No. 90 CV 70958DT, E.D.Mich.), and *Pyper v. CSH–Multi Hotel Limited Partnership*, (No. CV 89–11528, Maricopa County Superior Court, State of Arizona). As the plaintiff in *Rawlings* has reached a settlement with Firemen's in his action, Firemen's is no longer a defendant in that case. In *Pyper*, Firemen's was not named as a defendant in the original complaint. The

plaintiffs in *Pyper*, many of whom are Hart defendants in the case at bar, have moved to amend their complaint to include Firemen's as a defendant.

4. Although a hearing is generally required on a motion for a preliminary injunction, *see Fengler v. Numismatic Americana, Inc.*, 832 F.2d 745 (2d Cir.1987), where the parties are content, as here, to rest on affidavits submitted to the Court, the right to an evidentiary hearing is waived. *Consolidated Gold Fields PLC v. Minorco, S.A.*, 871 F.2d 252, 256 (2d Cir.), *cert. dismissed*, — U.S. ——, 110 S.Ct. 29, 106 L.Ed.2d 639 (1989). Moreover, inquiries were made by the Court to each party regarding whether it wanted a hearing, and each responded in the negative.

5. Defendants' motions to dismiss were denied by the Court's Order and Opinion dated December 13, 1990.

should not be routinely granted."). "A party seeking a preliminary injunction must demonstrate that it is likely to suffer possible irreparable harm if the requested relief is not granted and 'either (1) a likelihood of success on the merits of its case or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in its favor.'" *Citibank, N.A. v. Nyland (CF8) Ltd.,* 839 F.2d 93, 97 (2d Cir.1988) (quoting *Coca–Cola Co. v. Tropicana Products, Inc.,* 690 F.2d 312, 314–15 (2d Cir.1982)); *see also Consolidated Gold Fields, supra,* 871 F.2d at 256. In general, "the purpose of a preliminary injunction is to preserve the *status quo."* *Tucker Anthony Realty Corp. v. Schlesinger,* 888 F.2d 969, 972 (2d Cir.1989).

■ The Second Circuit has repeatedly stressed the importance of a showing of irreparable harm by the movant. "[I]nequitable conduct alone cannot justify the entry of a preliminary injunction. The linchpin of such interim relief is that threatened irreparable harm will be prevented by that injunction." *Buckingham Corp. v. Karp,* 762 F.2d 257, 262 (2d Cir. 1985). "'Perhaps the single most important prerequisite for the issuance of a preliminary injunction is a demonstration that if it is not granted the applicant is likely to suffer irreparable harm before a decision on the merits can be rendered.'" *Citibank, N.A. v. Citytrust,* 756 F.2d 273, 275 (2d Cir.1985) (quoting *Bell & Howell: Mamiya Co. v. Masel Supply Corp.,* 719 F.2d 42, 45 (2d Cir.1983)); Mulligan, *Forward, Preliminary Injunction in the Second Circuit,* 43 Brooklyn L.Rev. 831, 833 (1977) (showing of irreparable harm is fundamental and traditional requirement in any action where preliminary injunctive relief is sought).

■ The Second Circuit has consistently stressed that in order to be deemed "irreparable," so as to warrant the granting of injunctive relief, the harm alleged by the movant "must be one requiring a remedy of more than mere monetary damages. A monetary loss will not suffice unless the movant provides evidence of damage that cannot be rectified by financial compensation." *Tucker Anthony, supra,* 888 F.2d at 975; *see also Huntington v. Marsh,* 884 F.2d 648, 651 (2d Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 1296, 108 L.Ed.2d 473 (1990); *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.,* 596 F.2d 70, 72 (2d Cir.1979) ("irreparable injury means injury for which a monetary award cannot be adequate compensation."). Furthermore, "[t]o establish irreparable harm, plaintiffs must demonstrate 'an injury that is neither remote nor speculative, but actual and imminent.'" *Tucker Anthony, supra,* 888 F.2d at 975, (quoting *Consolidated Brands, Inc. v. Mondi,* 638 F.Supp. 152, 155 (E.D.N.Y.1986)); *accord Kaplan v. Board of Education,* 759 F.2d 256, 259 (2d Cir.1985). Finally, the Second Circuit has emphasized that it is not sufficient for a movant to demonstrate merely the possibility of irreparable harm. "An applicant for a preliminary injunction must show that it is *likely* to suffer irreparable harm if equitable relief is denied." *JSG Trading, supra,* 917 F.2d at 79 (emphasis in original). Thus, the standard that movant must meet is extremely high. In the instant cases, plaintiff has failed to demonstrate the requisite irreparable harm, and thus the instant motion for injunctive relief must be, and is, denied.

### The Cash Collateral Clause

■ The first branch of plaintiff's preliminary injunction motion seeks an order compelling each defendant to comply with the cash collateral clause contained in the Indemnification Agreement executed by the plaintiff and each defendant (the "Cash Collateral Clause").[6] Plaintiff thus asks

---

**6.** The Cash Collateral Clause reads as follows: "Upon the occurrence of an Event of Default, ... the Principal shall deliver to the Surety cash in an amount equal to the aggregate Bonded Obligations (irrespective of whether those Bonded Obligations are then due and owing) at the time outstanding after giving effect to any payment or payments by the Principal under the

this Court to force each defendant immediately to pay to plaintiff those amounts—whether already due, or that will become due in the future—for which plaintiff is responsible to MHT pursuant to the surety bonds. In support of this motion, plaintiff argues, as it must, that denial of the injunction will cause it to suffer irreparable harm, in that the Cash Collateral Clause will be rendered moot if it is not enforced now.

Although plaintiff's argument has surface appeal, upon analysis it is not persuasive. In short, plaintiff has failed to convince the Court that the harm it alleges that it will suffer if the injunction is denied is, in reality, irreparable. *See Tucker Anthony, supra*, 888 F.2d at 975. Instead, the Court believes that plaintiff's actual harm, if any, will be fully compensable with money damages, and thus the granting of injunctive relief is inappropriate. *See Jackson Dairy, supra*, 596 F.2d at 72.

Plaintiff makes several arguments in an attempt to establish that the injury it will suffer is irreparable. First, plaintiff relies heavily on the fact that an agreement—such as the Cash Collateral Clause—by a principal to provide its surety with collateral in advance of the surety making any payment to the creditor, is specifically enforceable. *See American Motorists Insurance Co. v. United Furnace Co., Inc.*, 876 F.2d 293, 299–300 (2d Cir.1989). From this, plaintiff reasons that because the absence of an adequate remedy at law is a prerequisite to the granting of specific performance, *see, e.g.*, 55 N.Y.Jur.2d *Specific Performance* § 8 (1967), the breach of the Cash Collateral Clause must be deemed to cause irreparable harm to plaintiff warranting the issuance of a preliminary injunction.

This overly-technical argument is critically flawed for several reasons. No case cited by plaintiff, nor any uncovered by independent research, makes the automatic connection urged by plaintiff between the ordinary remedy of specific performance and the extraordinary remedy of a preliminary injunction. Indeed, to do so would be to create a *per se* rule that would eliminate the crucial "irreparable harm" branch of the test for preliminary injunctions, in such cases where specifically enforceable contractual provisions are at issue. Moreover, to create such a linkage would be to misconceive the differing requirements for a grant of specific performance under New York law, and for the issuance of a preliminary injunction as established by the Second Circuit. As a leading treatise on New York law has explained:

> The mere availability of a remedy at law is not sufficient to bar plaintiff's right of action for specific performance of a contract. If a court of equity is confronted by a situation where the remedy at law is not plain and adequate, nor as certain, prompt, complete, and efficient to attain the ends of justice and its prompt administration as the remedy in equity, then, in the exercise of its discretion, it may grant specific performance.

55 N.Y.Jur.2d *Specific Performance* § 10 at 444. A grant of specific performance thus requires merely the absence of an *adequate* remedy at law, 55 N.Y.Jur.2d *Specific Performance* § 8, and, as the paragraph quoted above makes pellucidly clear, under New York law there exists a broad range of situations in which the remedy at law will be considered to be "inadequate" in the context of an action for specific performance. *See Leasco Corp. v. Taussig*, 473 F.2d 777, 786 (2d Cir.1972) (in

Note or by the Surety under the Investor Bond and reimbursed by the Principal pursuant to Section 1 hereof, such cash to be held by the Surety as security for the Obligations, and may be applied, from time to time, by the Surety to the payment of any amounts it is required or permitted to pay under the Investor Bond and/or against any present or future Obligations in such order as the Surety may elect. To the extent consistent with applicable law, the

Surety may commingle such cash collateral with its own funds and shall not be obligated to pay any interest on such funds to the Principal." Defendants do not contest that an "Event of Default," as defined by the Indemnification Agreement, has occurred with respect to each defendant. A defendant's withholding of payment on his or her note constitutes the "Event of Default."

finding that "substantial justice" could not be achieved without a grant of specific performance, and thus affirming such relief, the Court held that "[t]he fact that there is a remedy at law ... does not preclude equitable relief.").

This liberal standard stands in sharp contrast to the Second Circuit's narrow definition of irreparable harm as an injury "requiring a remedy of more than mere monetary damages," *Tucker Anthony, supra,* 888 F.2d at 975, and one that is "neither remote nor speculative, but actual and imminent." *Tucker Anthony, supra,* 888 F.2d at 975 (citation omitted). Likewise, the Supreme Court's restrictive definition of irreparable harm in the context of a preliminary injunction differs considerably from the standard for finding an inadequate remedy at law with respect to a claim for specific performance. In *Sampson v. Murray,* 415 U.S. 61, 94 S.Ct. 937, 39 L.Ed.2d 166 (1974), for example, the Supreme Court explained that:

> [T]he temporary loss of income, ultimately to be recovered, does not usually constitute irreparable injury.... "The key word in this consideration is *irreparable.* Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm."

*Sampson, supra,* 415 U.S. at 90, 94 S.Ct. at 953 (emphasis in original) (quoting *Virginia Petroleum Jobbers Association v. Federal Power Commission,* 259 F.2d 921, 925 (D.C.Cir.1958)). Thus, although the fact that a remedy at law may not be as "certain, prompt, complete, and efficient to attain the ends of justice and its prompt administration as the remedy in equity," 55 N.Y.Jur.2d *Specific Performance* § 10 at 444, may permit a claim for specific performance, it in no way mandates a finding of irreparable harm as part of a determination of whether to grant a preliminary injunction. *See Ecri v. McGraw–Hill, Inc.,* 809 F.2d 223, 227 (3d Cir.1987) (in finding plaintiff had failed to show irreparable injury, the Court stated that "[t]he requirements for the grant of a preliminary injunction are more stringent than those for specific performance."); *cf. In re Arthur Treacher's Franchisee Litigation,* 689 F.2d 1137, 1145 (3d Cir.1982) (reversing the district court's issuance of an injunction, the Circuit Court held that "a preliminary injunction which ordered the payment of monies where the underlying contract is disputed, misconceives the equitable nature and purpose of an injunctive proceeding.").

Correctly viewed, then, a showing of an inadequate remedy at law is a *sine qua non* of granting injunctive relief, but it is not synonymous with a showing of irreparable harm, and does not, without such a showing, support the granting of a preliminary injunction. *See Buckingham Corp. v. Karp,* 762 F.2d 257, 262 (2d Cir.1985) (reversing the district court's issuance of preliminary injunction, where the district court failed to recognize that irreparable injury is an independent requirement for granting such an injunction, separate from the adequacy of monetary relief). As Judge Posner has explained:

> In every case in which the plaintiff wants a preliminary injunction he must show that he has "no adequate remedy at law," and ... that he will suffer "irreparable harm" if the preliminary injunction is not granted. The absence of an adequate remedy at law is a precondition to any form of equitable relief. The requirement of irreparable harm is needed to take care of the case where although the ultimate relief that the plaintiff is seeking is equitable, implying that he has no adequate remedy at law, he can easily wait till the end of trial to get that relief. Only if he will suffer irreparable harm— that is, harm that cannot be prevented or fully rectified by the final judgment after trial—can he get a preliminary injunction.

*Roland Machinery Co. v. Dresser Industries, Inc.,* 749 F.2d 380, 386 (7th Cir.1984)

(citations omitted); *see also Buckingham Corp., supra*, 762 F.2d at 261 ("The purpose of a preliminary injunction is to protect the moving party from irreparable injury during the pendency of the action."); *Vogel v. American Society of Appraisers*, 744 F.2d 598, 599 (7th Cir.1984) (irreparable harm is shown only where "plaintiff is unlikely to be made whole by an award of damages or other relief at the end of the trial.") (citing *Semmes Motors, Inc. v. Ford Motor Co.*, 429 F.2d 1197, 1205 (2d Cir.1970) (Friendly, J.)).

The cases cited by plaintiff in support of its motion for an injunction immediately enforcing the Cash Collateral Clause are inapposite to the instant actions. In *Marine Midland Trust Company of New York v. Alleghany Corp.*, 28 F.Supp. 680 (S.D.N.Y.1939), the district court granted a preliminary injunction enforcing a covenant to post or maintain collateral security. The court did so, however, only after finding that it was "obvious, upon a consideration of the defendant's present financial condition, that if the ... fund is dissipated, a final decree ordering specific performance would be an idle ceremony." *Marine Midland, supra*, 28 F.Supp. at 684. Similarly, *Citibank, N.A. v. Singer Co.*, 684 F.Supp. 382 (S.D.N.Y.1988), cited by plaintiff, relied solely on cases in which the non-movant's assets were being depleted, or where the non-movant intended to frustrate a judgment against it on the merits by transferring its assets outside the court's jurisdiction.

■ It is familiar law that where a non-movant's assets may be dissipated before final relief can be granted, or where the non-movant threatens to remove its assets from the court's jurisdiction, such that an award of monetary relief would be meaningless, injunctive relief is proper. *See, e.g., S.E.C. v. American Board of Trade, Inc.*, 830 F.2d 431, 438–39 (2d Cir.1987); *In re Feit & Drexler, Inc.*, 760 F.2d 406, 416 (2d Cir.1985); *Drobbin v. Nicolet Instrument Corp.*, 631 F.Supp. 860, 912 (S.D.N.Y. 1986). However, in the cases at bar, plaintiff has made no showing whatsoever that

the defendants will be either unable to satisfy fully any money judgment against them, or that the defendants will attempt to render themselves judgment-proof. Rather, plaintiff merely alleges in its reply brief that "defendants' assets are subject to dissipation due to the risks of the current, unpredictable economic climate, defendants' payments to other creditors, gifts, poor business decisions, etc." Reply Memorandum of Law in Support of Motion for Preliminary Injunction at 8. These allegations fall well short of the clear requirement that "[t]o establish irreparable harm, plaintiffs must demonstrate 'an injury that is neither remote nor speculative, but actual and imminent,'" *Tucker Anthony, supra*, 888 F.2d at 975 (citation omitted), and, in fact, run counter to plaintiff's assertion in its moving brief that "[i]t appears from their applications for bonding that the defendants should be able to honor their cash collateral agreements...." Memorandum of Law in Support of Motion for Preliminary Injunction ("Plaintiff's Mem.") at 7.

Likewise, plaintiff's reference to defendant Rae Pyper's statement that Pyper has had his "financial resources ... virtually devastated," Affidavit of Rae Pyper in Support of Response in Opposition to Motion for Preliminary Injunction, sworn to on October 15, 1990, at ¶ 2, fails to establish that Pyper will not be able to satisfy a judgment against him. As plaintiff notes, Pyper's net worth at the time of his investment in the Partnership was $7,820,000. Reply Affidavit of Michael J. Ferrante in Support of Motion for Preliminary Injunction, sworn to on October 22, 1990, Exhibit A, at 7. Plaintiff alleges that Pyper owes it $83,440.21. Affidavit of Fred J. Sichel in Support of Motion for Preliminary Injunction, sworn to on August 22, 1990 ("Sichel Aff."), Exhibit B. The Court merely states the obvious in observing that although Pyper's fortunes may have fallen a great distance, they may still have come to rest at a level that would easily permit him to meet his obligations to plaintiff, should such obligations be established at trial. Plaintiff has failed to prove that a money judgment against defendants would be an empty vic-

tory, and thus has failed to show that its injuries would be irreparable.

Plaintiff also argues that by reason of defendants' continuing defaults, it has been forced to set up reserves with respect to its future risks with respect to the defendants. The effect of this, plaintiff asserts, is to "diminish the assets available for other corporate activities such as the issuance of further surety contracts for Firemen's customers." Sichel Aff. ¶ 15. Not only is this "harm" too remote and speculative to support the granting of the injunctive relief sought herein by plaintiff, *Tucker Anthony, supra*, 888 F.2d at 975, but it is well-established that the damage resulting from lost profits is compensable through monetary award. *See Buckingham Corp., supra*, 762 F.2d at 262.

■ Finally, plaintiff argues that if the Cash Collateral Clause is not enforced by way of a preliminary injunction, that bargained-for provision will be lost. However, it is clear that the parties to a contract cannot, by including certain language in that contract, create a right to injunctive relief where it would otherwise be inappropriate. In *Baker's Aid, a Division of M. Raubvogel Co., Inc. v. Hussmann Foodservice Co.*, 830 F.2d 13 (2d Cir.1987), for example, the Second Circuit reviewed a district court's denial of a preliminary injunction. The district court had held that the movant had failed to show it would suffer irreparable harm, despite language in the agreement between the parties stating that, in the event of breach, money damages would be deemed an inadequate remedy, and the breaching party would be enjoined from disclosing or using confidential material encompassed by the agreement. The Second Circuit affirmed, noting that "there is no authority in support of the proposition that irreparable harm must inevitably be assumed in breach of covenant

cases," *Baker's Aid, supra*, 830 F.2d at 15, and stating that "contractual language declaring money damages inadequate in the event of a breach does not control the question whether preliminary injunctive relief is appropriate." *Baker's Aid, supra*, 830 F.2d at 16.

The Cash Collateral Clause, likewise, does not, by its mere presence in the Indemnification Agreements, satisfy the requirement that plaintiff make a showing of likely irreparable harm before the Court will grant its motion for a preliminary injunction. To the contrary, the Court must fully apply the same test for irreparable harm that it would were the Cash Collateral Clause not to exist. *Fireman's Fund Insurance Co. v. Leslie & Elliott, Inc.*, 867 F.2d 150 (2d Cir.1989) (reversing the district court's issuance of preliminary injunction requiring defendant principal to deposit in escrow funds allegedly due plaintiff surety, pursuant to collateral security clause in surety contract, where the district court failed to make finding of irreparable harm).

Having applied the appropriate test for preliminary injunctive relief, *supra*, the Court has found that plaintiff has failed to prove, rather than merely to speculate, that it will suffer any harm that cannot be fully remedied following a trial on the merits. That plaintiff will be somewhat less secure than if its motion for a preliminary injunction were to be granted does not, by itself, constitute an irreparable injury so as to require the drastic remedy of such an injunction. "The requirement that a party seeking a preliminary injunction demonstrate that it will suffer irreparable harm in the absence of preliminary relief necessitates more than a mere showing that the party seeking relief will see its relative position deteriorate." *Sanders v. Air Line Pilots Association, International*, 473 F.2d 244, 248 (2d Cir.1972).[7] In the cases

---

**7.** Moreover, the Court notes that the paragraph in the Indemnification Agreements granting plaintiff certain collateral as security for the defendants' performance of their obligations to plaintiff, of which the Cash Collateral Clause is a part, includes a non-cash collateral clause as well. Paragraph 2(a) of the Indemnification Agreements provides, *inter alia*, that "the Principal hereby grants to the Surety, its successors and assigns, a security interest in ... the Principal's limited partnership interests in the Partnership, whether heretofore or hereafter ac-

at bar, as in any case where a preliminary injunction is sought, the Court must ascertain whether, if injunctive relief is denied, plaintiff will be unable to be fully compensated at the end of trial for any harm that has occurred during the pendency of the actions. *See Savage v. Gorski,* 850 F.2d 64, 67–68 (2d Cir.1988) (loss of employment does not in and of itself constitute "irreparable injury," because reinstatement and money damages can make fired employees whole for any loss suffered while the lawsuit is pending) (citing *Sampson, supra,* 415 U.S. at 90–91, 94 S.Ct. at 952–53); *Buckingham Corp., supra,* 762 F.2d at 261. Without any showing that plaintiff will be unable to recover fully from the defendants after these actions have been resolved on the merits, and, indeed, with some suggestion from plaintiff itself that the contrary is true, Plaintiff's Mem. at 7, the Court cannot find that it is likely that plaintiff will suffer irreparable injury should its instant motion be denied. For that reason, plaintiff's motion for a preliminary injunction enforcing the Cash Collateral Clause is denied.

*Exoneration and Quia Timet*

■■■ Plaintiff has moved, in the alternative, for an order granting a preliminary injunction enforcing plaintiff's rights as surety to exoneration and *quia timet,* by requiring each defendant to deposit either with plaintiff or the Court that sum for which plaintiff is still at risk with respect to each defendant. Exoneration is the equitable right of a surety to compel its principal to pay a debt when it comes due, thereby discharging the surety from its obligations under the surety bond. *Filner v. Shapiro,* 633 F.2d 139, 142 (2d Cir.1980); *In re Gas Reclamation, Inc. Securities Litigation,* 741 F.Supp. 1094 (S.D.N.Y. 1990); 63 N.Y.Jur.2d *Guaranty and Suretyship* § 419 at 554 (1987). Although exoneration is generally employed in a suit to compel the principal to pay the debt direct-

ly to the creditor, it may also be used to require that the sum due be paid into court or to the surety. *Restatement of Security* § 112 at 294–95 (1941). *Quia timet* is the right to be protected from an anticipated future injury where it cannot be avoided by a present action at law. In the context of a suretyship, " '[n]ot only does a bill quia timet lie to compel the principal to pay the debt after it has become due, but its use has also been extended to compel the principal to furnish the surety indemnity against possible loss where the surety has reasonable grounds for anticipating that his rights are being jeopardized and that he will incur a liability by threatened conduct of the principal.' " *Milwaukie Construction Co. v. Glens Falls Insurance Co.,* 367 F.2d 964, 966 (9th Cir.1966) (quoting 50 Am.Jur. *Suretyship* § 225 (1944)).

■■■ These rights have historically been recognized only in conjunction with a decision by the Court on the merits, not, as in these cases, at the preliminary stage where little or no discovery has taken place. Sichel Aff. ¶ 13. Plaintiff, however, argues that it should be able to obtain immediately, through the device of a preliminary injunction, what is, in effect, final relief. Having thus sought injunctive relief, plaintiff argues that this Court's refusal to grant it such relief will cause it irreparable injury, that injury being the loss of its exoneration and *quia timet* rights. For many of the same reasons that the Court found plaintiff had failed to prove it would suffer irreparable harm should the Cash Collateral Clause not be immediately enforced, the Court finds that with respect to its exoneration and *quia timet* rights, plaintiff has, likewise, not shown it will be injured such that it cannot be fully compensated after a decision on the merits of its claims.

quired, including all of the Principal's rights and interests in and to the Partnership and any successor partnership and all of the Principal's rights and interests in and under the Partnership Agreement, as it may be amended from time to time, the net profits and net losses of the Partnership, and any distributions of any nature

by the Partnership (whether in money or property) which the Principal is or may be entitled to receive for any reason, together with all proceeds of any thereof...." Plaintiff has provided no evidence that this non-cash collateral is insufficient to provide plaintiff the security it seeks.

Plaintiff's argument with respect to its alleged irreparable harm is bottomed on the following reasoning: If plaintiff's exoneration and *quia timet* rights are not immediately enforced, those rights will be lost forever, and thus it will be permanently injured. In support of this position, plaintiff cites *Northwestern National Insurance Co. v. Alberts*, 741 F.Supp. 424 (S.D.N.Y.1990), and two unpublished memorandum orders,[8] *Wingsco Energy One v. Vanguard Groups Resources 1984, Inc.*, No. H–86–452, 1989 WL 223756 (S.D.Tex. Nov. 14, 1989) and *Northwestern National Insurance Co. v. Barney*, No. C86–3936, 1988 WL 215411 (E.D.Ohio Nov. 18, 1988), for the proposition that it is "the loss of the [exoneration and *quia timet*] rights, not the potential financial loss, [that] constitutes the irreparable harm," *Alberts, supra*, 741 F.Supp. at 432, and thus injunctive relief enforcing those rights may be granted. In *Alberts* and *Barney*, the courts stated this conclusion without further analysis.[9] In *Wingsco*, the court based its holding on the ground that "federal courts recognize that protection of rights is one of the primary purposes of a preliminary injunction." *Wingsco, supra*, slip op. at 6.

This Court, however, must conclude that plaintiff's argument is, in reality, no more than an attempt to circumvent the stringent test for a showing of irreparable injury, that is the prerequisite to any grant of a preliminary injunction.[10] In the cases at bar, the rights that plaintiff may lose if injunctive relief is denied are, when plainly viewed, simply rights to money.[11] As such, the loss of those rights may be compensated by a corresponding monetary award after the parties' claims are resolved on the merits, and thus no injury of an irreparable nature will occur. *See Tucker Anthony, supra*, 888 F.2d at 975; *Huntington, supra*, 884 F.2d at 651; *Jackson Dairy, supra*, 596 F.2d at 72. These cases are thus clearly distinguishable from those cases holding that the loss of constitutional rights, or the loss of rights to property of a non-monetary nature, cause irreparable harm. *See, e.g., Elrod v. Burns*, 427 U.S. 347, 373, 96 S.Ct. 2673, 2689–90, 49 L.Ed.2d 547 (1976) (loss of First Amendment rights constitutes irreparable harm); *Optivision, Inc. v. Syracuse Shopping Center, Associates*, 472 F.Supp. 665 (N.D.N.Y.1979) (loss of customer goodwill).

As discussed, *supra*, with respect to plaintiff's Cash Collateral Clause motion, there is no evidence that the defendants in these actions will be unable to satisfy fully a money judgment against them, nor is there any evidence that any defendant will attempt to transfer or dissipate his or her assets so as to frustrate a money judgment. Plaintiff's argument thus reduces to sophistic reasoning that by being denied that which is, in effect, an attachment of defendants' money, it will be irreparably injured. Yet, unless defendants ultimately

---

**8.** It is worth noting that the Second Circuit has urged caution in the citation of unreported opinions. *See Warner Bros. Inc. v. Dae Rim Trading, Inc.*, 877 F.2d 1120, 1128 (2d Cir.1989).

**9.** Judge Sweet, the author of *Alberts*, recently reached the same result as in that case in *Bruce v. Martin*, No. 87 Civ. 7737, 1990 WL 196397 (Nov. 26, 1990), stating only that "[b]ecause there are no grounds on which to distinguish this case from [*Alberts*]," the plaintiff surety's motion for a preliminary injunction enforcing its rights of exoneration and *quia timet* would be granted.

**10.** To the extent that this Court differs in its conclusions from the conclusions of other district courts, the Court notes that the decision of one district does not control the decision of another district court. *See Starbuck v. City and County of San Francisco*, 556 F.2d 450, 457 n. 13 (9th Cir.1977) ("The doctrine of *stare decisis*

does not compel one district judge to follow the decision of another."); *Crounse v. Stimpson Computing Scale Co.*, 675 F.Supp. 62, 64 (N.D.N.Y.1987) (district court has "independent duty to determine the current relevant" law); *E.E.O.C. v. Pan American World Airways*, 576 F.Supp. 1530, 1535 (S.D.N.Y.1984) (decision of one district court is not binding precedent upon another district court); *see also United States v. Birney*, 686 F.2d 102, 107 (2d Cir.1982) (in context of law of the case, "judges of coordinate jurisdiction are not bound by each others rulings, but are free to disregard them if they so choose.").

**11.** The rights of exoneration and *quia timet* do not depend on any showing of irreparable harm. *See Milwaukie Construction Co., supra*, 367 F.2d at 966 (quoting 50 Am.Jur. *Suretyship* § 225 (1944) and 72 C.J.S. *Principal and Surety* § 303 (1951)).

fail to satisfy a money judgment, should they be found liable to plaintiff, plaintiff will have suffered no irreparable injury. The relevant question is whether, at the end of trial, plaintiff can be compensated for any harm it may have endured during the pendency of these actions. *See Buckingham Corp., supra,* 762 F.2d at 261; *Vogel, supra,* 744 F.2d at 599 (citing *Semmes Motors, supra,* 429 F.2d at 1205). Plaintiff has not shown to the Court that it is likely that the answer to that question will be in the negative. Plaintiff's irreparable harm is thus remote and speculative, at best. *See Tucker Anthony, supra,* 888 F.2d at 975. The fact that plaintiff may, in the interim, be marginally less secure with respect to the availability of a final money judgment, does not constitute "irreparable harm" so as to merit the extraordinary remedy of a preliminary injunction. *See Sampson, supra,* 415 U.S. at 90, 94 S.Ct. at 952–53; [12] *Sanders, supra,* 473 F.2d at 248.

The Court also notes that plaintiff has not shown that denial of injunctive relief will, in fact, leave it unsecured with respect to defendants' obligations. As noted above, the Indemnification Agreements provide plaintiff with a security interest in the defendants' interests in the Partnership. *See supra* note 7. Furthermore, it is firmly established that a surety who is required to make a payment on behalf of its principal, is subrogated to all of the creditor's rights and remedies against the principal, including any interests which the

creditor has in security for the principal's performance. *Filner, supra,* 633 F.2d at 142; 63 N.Y.Jur.2d *Guaranty and Suretyship* § 442 at 581; 72 C.J.S. *Principal and Surety* § 229 at 355; Restatement of Security § 141 at 383.

Given the "extraordinary and drastic" nature of the remedy sought by plaintiff, *Medical Society, supra,* 560 F.2d at 538, and the insubstantial showing of irreparable injury in its absence, the Court declines to exercise its equitable power to grant that remedy in the instant cases. Plaintiff's motion for a preliminary injunction compelling defendants to transfer to plaintiff or to the Court that sum for which each defendant may be obligated to plaintiff is, therefore, denied.[13]

### Plaintiff's Delay in Seeking Injunctive Relief

A related consideration, relevant to both branches of plaintiff's preliminary injunction motion, is plaintiff's considerable delay in seeking injunctive relief. The Second Circuit has observed that "[p]reliminary injunctions are generally granted under the theory that there is an urgent need for speedy action to protect the plaintiffs' rights. Delay in seeking enforcement of those rights, however, tends to indicate at least a reduced need for such drastic, speedy action.... Although a particular period of delay may not rise to the level of laches and thereby bar a permanent injunc-

---

12. "[T]he temporary loss of income, ultimately to be recovered, does not usually constitute irreparable injury.... 'The key word in this consideration is *irreparable.* Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm.'" (emphasis in original) (quoting *Virginia Petroleum Jobbers, supra,* 259 F.2d at 925).

13. Relief similar to that sought by plaintiff herein was denied by Judge Sand in *In re Gas Reclamation, supra,* 741 F.Supp. 1094. In so holding, Judge Sand stated that

[i]n advance of a trial on the merits of the various claims of [the surety] and the individual investors, we refuse to grant [exoneration

and *quia timet* ] relief to [the surety]. The ultimate responsibility for the debts evidenced by the Notes can only be established by such a trial. [The surety] accepted premiums from the investors in exchange for its promise to guarantee the investors' payments to the Banks. That contractual promise did not limit [the surety's] commitment to pay the Banks to cases of financial insolvency of individual investors. Even if we assume that [the surety] will ultimately collect from each investor, one of the obligations [the surety] was paid to assume as surety was the risk that it would be required to advance payments for which it would eventually receive reimbursement.

*In re Gas Reclamation, supra,* 741 F.Supp. at 1105. This reasoning further bolsters the Court's view that the issuance of a preliminary injunction would be inappropriate in the cases at bar.

tion, it may still indicate an absence of the kind of irreparable harm required to support a preliminary injunction." *Citibank, N.A., supra,* 756 F.2d at 276. Shortly after its decision in *Citibank, N.A.,* the Second Circuit further held in *Majorica, S.A. v. R.H. Macy & Co., Inc.,* 762 F.2d 7, 8 (2d Cir.1985), that "[l]ack of diligence, standing alone, may ... preclude the granting of preliminary injunctive relief, because it goes primarily to the issue of irreparable harm...." *See also Railroad P.B.A. of the State of New York, Inc. v. Metro–North Commuter Railroad,* 699 F.Supp. 40, 43 (S.D.N.Y.1988) (delay in seeking enforcement of rights undercuts argument that injunctive relief is necessary); *Manhattan State Citizens' Group, Inc. v. Bass,* 524 F.Supp. 1270, 1275 (S.D.N.Y. 1981) (delay in seeking preliminary injunction "militates against the claim of irreparable injury and may be ground for barring injunctive relief."). These conclusions are consistent with the ancient maxim that "equity aids the vigilant, not those who slumber on their rights." 11 Wright & Miller, *Federal Practice and Procedure* § 2946 at 417 (1973).

In the instant cases, many of the defendants first refused to make payments on their notes on October 1, 1989. MHT subsequently demanded payment from plaintiff pursuant to plaintiff's surety bonds, and plaintiff first made such payments on December 1, 1989. Plaintiff did not commence the first of these actions, however, until February 16, 1990, some four-and-a-half months after the first defaults by the defendants, and some two-and-a-half months after plaintiff had already paid MHT pursuant to the surety bonds. Even more significant is the amount of delay preceding plaintiff's filing of the present motion for preliminary injunctive relief. This motion was filed on August 27, 1990, almost *eleven* months after the defendants first defaulted on their note payments, and plaintiff did not file its reply memorandum

until October 22, 1990, almost *thirteen* months after the first defaults.

Although the Court has, on grounds independent of plaintiff's delay, found no showing of irreparable harm that can support a preliminary injunction, plaintiff's delay buttresses that finding. Indeed, "[p]laintiff's delay in commencing this lawsuit suggests its own doubts as to the severity of harm at hand," *Railroad P.B.A., supra,* 699 F.Supp. at 43, and this holds all the more true with respect to plaintiff's delay in actually moving for injunctive relief.[14]

### CONCLUSION

For the reasons set forth above, plaintiff's motion for a preliminary injunction is denied in its entirety.

SO ORDERED.

---

**14.** That plaintiff, pursuant to the surety bonds, paid MHT more than $400,000 before moving for a preliminary injunction, Sichel Aff., Exhibit B, provides a compelling argument that plaintiff is, in reality, confident that it will be able to recover such monies after trial, should it prevail on the merits.