MLCJR, LLC v PDP Group, Inc. (2025 NY Slip Op 50369(U))

[*1]

MLCJR, LLC v PDP Group, Inc.

2025 NY Slip Op 50369(U)

Decided on March 21, 2025

Supreme Court, New York County

Chan, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on March 21, 2025
Supreme Court, New York County

MLCJR, LLC et al., Plaintiffs,

against
PDP Group, Inc. D/B/A AMYNTA SURETY SOLUTIONS, et al., Defendants.

Index No. 657028/2022

Counsel for Plaintiffs/Counterclaim-Defendants: Nicholas J. Faso, Elizabeth Usinger, and Kristen A. Davis of Cullen and Dykman LLP & Bryant S. York of Stone Pigman Walther Wittmann LLC
Counsel for Defendants/Counterclaim-Plaintiffs: Armen Shahinian, Brian Kanter, and Brian H. Fischkin of Chiesa Shahinian & Giantomasi PC
Margaret A. Chan, J.

The following e-filed documents, listed by NYSCEF document number (Motion 003) 177, 178, 179, 180, 181, 182, 183, 184, 185, 186, 187, 188, 189, 190, 191, 192, 193, 194, 195, 196, 197, 198, 199, 201, 202, 203, 204, 205, 206, 207, 208, 209, 210, 211, 212, 213, 214, 215, 216, 217, 218, 219, 220, 221, 222, 223, 224, 225, 226, 227, 228, 229, 230, 231, 232, 233, 234, 235, 236, 289, 290, 291, 292, 293 were read on this motion to/for PREL INJUNCTION/TEMP REST ORDR .
The following e-filed documents, listed by NYSCEF document number (Motion 005) 328, 329, 330, 331, 332, 333, 334, 335, 336, 337, 338, 339, 340, 352, 353, 354, 355, 356, 357, 358, 359, 360, 361, 362, 363, 364, 365, 366, 367, 368, 369, 370, 371, 372, 373, 374, 375, 376, 377, 378, 379 were read on this motion to/for PREL INJUNCTION/TEMP REST ORDR.
Plaintiffs MLCJR, LLC, Cox Oil Offshore, LLC, Cox Operating, LLC, CEXXI, Inc., Cox Investment Partners LP, and Energy XXI Gulf Coast, Inc. (collectively, plaintiffs) bring this action against defendants PDP Group, Inc. d/b/a Amynta Surety Solutions, Aspen American Insurance Company (Aspen), and US Fire Insurance Company (US Fire) asserting claims for declaratory relief, breach of contract, breach of the duty of good faith and fair dealing, and a violation of General Business Law § 349 (NYSCEF # 1). US Fire, in turn, asserts counterclaims against plaintiffs in connection with plaintiffs' purported failure to deposit collateral security with USFIC pursuant to an indemnification agreement between the parties (NYSCEF # 20).
Presently before the court are two motions by US Fire. In MS003, US Fire moves, by [*2]order to show cause, for an order pursuant to CPLR 6301 (a) directing counterclaim defendants Cox Oil, LLC, CEXXI, Inc., and Cox Investment Partners LP (collectively, Cox cc-defendants) to deposit collateral security with US Fire in the amount of $10,500,000 in connection with two surety bonds issued by US Fire for the Cox cc-defendants; and (b) enjoining the Cox cc-defendants from conveying, selling, assigning, transferring, encumbering, or otherwise dissipating any property or assets in which they have an interest pending compliance with their collateral and discharge obligations to US Fire (NYSCEF # 196). And in MS005, US Fire moves, again by order to show cause, for an order pursuant to CPLR 6301(1) directing the Cox cc-defendants to deposit collateral security in the amount of $3,000,000 in connection with a separate surety bond issued by US Fire for the Cox cc-defendants, and (2) enjoining the Cox cc-defendants from conveying, selling, assigning, transferring, encumbering, or otherwise dissipating any property or assets in which they have an interest pending compliance with their collateral and discharge obligations to US Fire (NYSCEF # 339). The Cox cc-defendants oppose both motions.
For the following reasons, US Fire's motions are denied.
Background
The following facts are drawn from the affirmations and exhibits submitted in connection with US Fire's motion, as well as, when needed, a search of the record. The court assumes familiarity with the background of the parties' dispute, which has been thoroughly recounted in prior decisions issued in this matter (see NYSCEF #s 108; NYSCEF # 166).
The GAI
This dispute arises out of a General Agreement of Indemnity, dated April 16, 2016, executed by plaintiffs, together with non-party Brad E. Cox (together, Indemnitors), in favor of Aspen, Aspen Specialty Insurance Company, and effective as of October 6, 2020, through certain riders, US Fire (the GAI) (see NYSCEF #s 179, 330 — GAI at 3-5, 12; NYSCEF # 178 — Aguiar MS003 aff ¶¶ 6-7; NYSCEF # 329 — Aguiar MS005 aff ¶¶ 6-7). The GAI set forth certain indemnity and collateral terms governing the parties' relationship. As is relevant here, pursuant to Paragraph 3 of the GAI, the Indemnitors agreed that
[u]pon Surety's written demand, Indemnitors shall promptly deposit with Surety a clean, irrevocable letter of credit ('ILOC') on a form and from a bank acceptable to Surety, or shall provide another form of collateral acceptable to Surety (individually and collectively, the 'Collateral') in the amount of any reserve Surety establishes for any existing liability or claim, and or any expenses associated therewith, whether or not any assertion or payment of such liability, claim, or expense has been made at the time of the Surety's demand
(GAI ¶ 3).[FN1]
As part of this provision, the Indemnitors further "expressly and specifically agree[d] that Surety in its sole discretion and for any reason may, by written demand, require Indemnitors to provide the Surety within ten (10) days collateral . . . in the amount representing the total of any undischarged liability under the Bonds as determined by the Surety in its sole discretion" [*3](id.).[FN2]
Indemnitors, in turn, "waive[d] any and all defenses or challenges to the provision of collateral" and "agree[d] that Surety will have no adequate remedy at law should Indemnitors fail to post any collateral required herein and [] that Surety is entitled to specific performance of the obligation to post collateral" (id.).
Subsequent to the Indemnitors' execution of the GAI, Aspen, as surety, executed a total of 16 commercial surety bonds on behalf of Indemnitors and/or their affiliates, in favor of various obligees named in the bonds (see NYSCEF # 1 ¶ 23; NYSCEF # 20 ¶ 15; see also NYSCEF #s 33-48). Each of these bonds was executed to cover an array of obligations arising under Indemnitors' oil and gas operations in the Gulf of Mexico (NYSCEF # 1 ¶¶ 3, 23; NYSCEF # 20 ¶ 18). At issue in the present motions are claims asserted in connection with three of these bonds: (1) Bond No. 612410365 in favor of the Bureau of Ocean Energy Management (BOEM) (the BOEM Bond); (2) Bond No. 612410135 in favor of the Union Oil Company of California (UNOCAL) (UNOCAL Bond); and (3) Bond No. 612410370 in favor of BOEM (BOEM II Bond) (NYSCEF # 181 — BOEM Bond; NYSCEF # 188 — UNOCAL Bond; NYSCEF # 332 — BOEM II Bond; Aguilar MS003 aff ¶¶ 9-11, 19-21; Aguilar MS005 aff ¶¶ 9-11).
The BOEM Bond Claim and Collateral Demand
On September 9, 2013, Aspen, as surety, executed Bond No. SU32704 for Energy XXI GOM, LLC (Energy XXI), as principal, in the penal sum of $3,000,000 in favor of BOEM to secure Energy XXI's performance of its plugging and abandonment obligations for certain oil leases associated with the BOEM Bond (the BOEM Leases)[FN3]
(Aguilar MS003 aff ¶ 9; NYSCEF # 180). On January 26, 2022, Energy XXI replaced this bond with the BOEM Bond, which still had a penal sum of $3,000,000 in favor of BOEM (BOEM Bond at 1; Aguilar MS003 aff ¶¶ 10-11). Under the BOEM Bond, US Fire "absolutely and unconditionally [bound] itself to the United States of America acting through and by [BOEM] . . . for the payment of all of the cost of [Energy XXI's] plugging and abandonment Obligations" (BOEM Bond at 2). The BOEM Bond further provided that "[i]n the event of any default under a lease, [US Fire] must provide payment of all of the cost of the Obligations of [Energy XXI] upon demand by BOEM" (id. at 3).
On May 14, 2023, Energy XXI filed for Chapter 11 bankruptcy in the United States Bankruptcy Court for the Southern District of Texas (Aguilar MS003 aff ¶ 12; NYSCEF # 182). On May 20, 2024, after the Bankruptcy Court converted Energy XXI's Chapter 11 reorganization proceeding into a Chapter 7 liquidation proceeding, BOEM issued a claim letter to Energy XXI, copying US Fire (the BOEM Claim) (Aguilar MS003 aff ¶¶ 13-14; NYSCEF # 184 — BOEM Ltr). The BOEM Claim explained that Energy XII had "failed to comply with the requirements to perform decommissioning obligations" under the terms of the BOEM Leases, and therefore BOEM was authorized "to call for the forfeiture of [the BOEM Bond], totaling $3,000,000," based on Energy XII's "failure to meet its contractual obligations" (Aguilar MS003 aff ¶ 14; [*4]BOEM Claim Ltr at 1). BOEM estimated that the "cost of the decommissioning obligations associated with [the BOEM Leases]" was $79,025,219.00 (Aguilar MS003 aff ¶ 14; BOEM Ltr at 1).
On June 5, 2024, US Fire sent the Cox cc-defendants a written demand notifying them of Energy XXI and US Fire's receipt of the BOEM Claim (the BOEM Collateral Demand) (Aguilar MS003 aff ¶ 17; NYSCEF # 186 — BOEM Collateral Demand at 1-2). US Fire demanded that "within ten (10) days of the date of th[e] letter" that the Cox cc-defendants "provide [US Fire] with $3,000,000 in collateral, in a form acceptable to [US Fire], which amount represents the total undischarged liability under th[e] [BOEM] Bond" (Aguilar MS003 aff ¶ 17; BOEM Collateral Demand at 2). Later, on July 23, 2024, BOEM issued a forfeiture notice (the BOEM Forfeiture Notice), which notified Energy XXI that BOEM had not received any response to the BOEM Claim and therefore it had ordered "forfeiture of [the BOEM Bond] due to [Energy XXI's] failure to comply with requirements to perform decommissioning obligations included in the terms and conditions associated with [the BOEM Leases], currently estimated at $79,025,219" (Aguilar MS003 aff ¶ 15; NYSCEF # 185 — BOEM Forfeiture Notice at 1).
US Fire asserts that the BOEM Claim and BOEM's ordered forfeiture of the bond's penal sum exposes it to at least $3,000,000 in potential liability (see Aguilar MS003 aff ¶ 16). To date, the Cox cc-defendants have not complied with the BOEM Collateral Demand or deposited collateral with US Fire (id. ¶ 18).
The UNOCAL Bond Claim and Collateral Demand
On September 9, 2013, Aspen, as surety, executed Bond No. SU13837 for EPL Oil & Gas, Inc. n/k/a EPL Oil & Gas, LLC (EPL), as principal, in the penal sum of $7,500,000 in favor of UNOAL, to secure EPL's performance of its obligations for the plugging and abandonment of the oil lease covered by this bond (the UNOCAL Lease)[FN4]
(Aguilar MS003 aff ¶ 19; NYSCEF # 187). On September 9, 2021, EPL replaced this bond with the UNOCAL Bond, which still had a penal sum of $7,500,000 in favor of UNOCAL (UNOCAL Bond at 1; Aguilar MS003 aff ¶¶ 20-21). Under the terms of the UNOCAL Bond, US Fire agreed to "guarantee[] the full and faithful compliance by [EPL] . . . to timely and fully satisfy [EPL's] Decommissioning Obligations" for the UNOCAL Lease (UNOCAL Bond at 6). Pursuant to the UNOCAL Bond, if EPL "fail[ed] to carry out its obligations . . . to perform the Decommissioning Obligations . . . and such condition persisted for forty-five (45) days after written notice of default . . . [US Fire] shall, within thirty (30) days" either perform EPL's obligations itself or pay UNOCAL "an amount equal to the actual charges for performing the Decommissioning Obligations . . . up to, but not exceeding the penal amount" of the UNOCAL Bond (id. at 7).
On May 14, 2023, EPL, like Energy XXI, filed for Chapter 11 bankruptcy in the United States Bankruptcy Court for the Southern District of Texas, and, like Energy XXI, EPL later moved the Bankruptcy Court to convert this reorganization proceeding into a Chapter 7 liquidation proceeding (Aguilar MS003 aff ¶¶ 22-23; NYSCEF #s 183, 189, 190). On July 9, 2024, after the Bankruptcy Court approved this conversion, UNOCAL issued a claim letter to [*5]EPL and US Fire (the UNOCAL Claim) (Aguilar MS003 aff ¶ 24; NYSCEF # 191 — UNOCAL Ltr at 1). As set forth in the UNOCAL Claim, UNOCAL notified EPL and US Fire that it had been advised that EPL had "defaulted on its obligations to decommission the [UNOCAL Lease]" and that it had been ordered "to perform these obligations" by the Bureau of Safety and Environment Enforcement (Aguilar MS003 aff ¶ 24; UNOCAL Ltr at 1). As a result of EPL's uncured default, UNOCAL directed US Fire to either pay for actual charges for performing EPL's decommission obligations or commence these operations (UNOCAL Ltr at 1-2). Based on EPL's failure to cure the default identified by UNOCAL, US Fire asserts that it is exposed to at least $7,500,000.00 in potential liability (Aguilar MS003 aff ¶¶ 25-27).
On July 15, 2024, US Fire sent the Cox cc-defendants a written demand notifying them that EPL and US Fire's receipt of the UNOCAL Claim (the UNOCAL Collateral Demand) (Aguilar MS003 aff ¶ 28; NYSCEF # 193 — UNOCAL Collateral Demand at 2). US Fire demanded that, given the substantial costs implicated by the UNOCAL Claim, the Cox cc-defendants, "within ten (10) days of the date of th[e] letter . . . provide [US Fire] with $7,500,000 in collateral, in a form acceptable to [US Fire] (Aguilar MS003 aff ¶ 28; UNOCAL Collateral Demand at 3). To date, the Cox cc-defendants have failed to comply with the UNOCAL Collateral Demand and have not deposited collateral with US Fire (Aguilar MS003 aff ¶ 29).
The BOEM II Bond Claim and Collateral Demand
On April 16, 2016, Aspen, as surety, executed Bond No. SU13888 for Cox Oil Offshore, LLC (Cox Oil Offshore), as principal, in the penal sum of $3,000,000 in favor of BOEM to secure Cox Oil Offshore's performance of its plugging and abandonment obligations for certain oil leases associated with the BOEM II Bond (the BOEM II Leases)[FN5]
(Aguilar MS005 aff ¶ 9; NYSCEF # 331). On April 15, 2022, Cox Oil Offshore replaced this bond with the BOEM II Bond, which still had a penal sum of $3,000,000 in favor of BOEM (BOEM II Bond at 1; Aguilar MS005 aff ¶¶ 10-11). Under the BOEM II Bond, US Fire "absolutely and unconditionally [bound] itself to the United States of America acting through and by [BOEM] . . . for the performance of all present and future Obligations" owed by Cox Oil Offshore (BOEM Bond at 2). The BOEM Bond further provided that "[i]n the event of any default under a lease, [US Fire] must provide payment of all the cost of the Obligations of [Cox Oil Offshore] upon demand by BOEM" (id. at 3).
On May 14, 2023, Cox Oil Offshore, like Energy XXI and EPL, filed for Chapter 11 bankruptcy in the United States Bankruptcy Court for the Southern District of Texas, and, like Energy XXI and EPL, Cox Oil Offshore later moved the Bankruptcy Court to convert this reorganization proceeding into a Chapter 7 liquidation proceeding (Aguilar MS003 aff ¶¶ 12-13; NYSCEF #s 333-335). On October 30, 2024, after the Bankruptcy Court approved this conversion, BOEM issued a claim letter to Cox Oil Offshore, copying US Fire (the BOEM II Claim) (Aguilar MS005 aff ¶ 14; NYSCEF # 336 — BOEM II Ltr at 1). The BOEM Claim explained that Cox Oil Offshore had "failed to comply with the requirement to perform [*6]decommissioning obligations" under the terms of the BOEM II Leases, and therefore BOEM was authorized "to call for the forfeiture of [the BOEM II Bond], totaling $3,000,000" based on Cox Oil Offshore's "failure to meet it[s] contractual obligations" (Aguilar MS005 aff ¶ 14; BOEM II Ltr at 1). BOEM estimated that the "cost of the decommissioning obligations associated with [the BOEM II Leases]" was $3,629,884 (Aguilar MS005 aff ¶ 14; BOEM Ltr at 1). According to US Fire, Cox Oil Offshore's failure to cure its default under the BOEM II Bond exposes US Fire to at least $3,000,000 in potential liability (Aguilar MS005 aff ¶¶ 15-16).
On November 5, 2024, US Fire sent the Cox cc-defendants a written demand notifying them of Cox Oil Offshore and US Fire's receipt of the BOEM II Claim (the BOEM II Collateral Demand) (Aguilar MS005 aff ¶ 17; NYSCEF # 329 — BOEM II Collateral Demand at 1-2). US Fire demanded that "within ten (10) days of the date of th[e] letter" that the Cox cc-defendants "provide [US Fire] with $3,000,000 in collateral, in a form acceptable to [US Fire], which amount represents the total undischarged liability under th[e] [BOEM II] Bond" (Aguilar MS003 aff ¶ 17; BOEM II Collateral Demand at 2). To date, the Cox cc-defendants have failed to comply with the BOEM II Collateral Demand and have not deposited collateral with US Fire (Aguilar MS005 aff ¶ 18).
Present Motion and Party Arguments
On July 31, 2024, US Fire filed the first of two motions for preliminary injunction seeking an order directing the Cox cc-defendants to deposit collateral security with US Fire in the amount of $10,500,000 as result of the BOEM Claim and UNOCAL Claim (NYSCEF # 196). On November 20, 2024, approximately two months after briefing had concluded on US Fire's first preliminary injunction motion, it filed a second motion for a preliminary injunction seeking an order directing the Cox cc-defendants to deposit collateral security in the amount of $3,000,000 as a result of the BOEM II Claim (NYSCEF # 339). In both motions, US Fire also seeks to enjoin the Cox cc-defendants from conveying, selling, assigning, transferring, encumbering, or otherwise dissipating any property or assets in which they have an interest, pending their compliance with their collateral security obligation to deposit a total of $13,500,000 in collateral with US Fire in connection with the BOEM Bond, the UNOCAL Bond, and the BOEM II Bond (NYSCEF # 196 at 1-2; NYSCEF # 339 at 1-2).
In support of its motion, US Fire asserts that it has a strong probability of success on its claim for specific performance because (1) the Cox cc-defendants agreed that their failure to deposit collateral security would be enforceable by specific performance, and (2) the collateral demanded by US Fire under the GAI reflects the anticipated losses arising from the BOEM, UNOCAL, and BOEM II Claims (MS003 MOL at 17-18; MS005 MOL at 14-16; MS003 Reply at 10-12; MS005 Reply at 10-12). Next, turning to irreparable harm, US Fire avers that, as a matter of New York law, an indemnitor's failure to deposit collateral security with its surety constitutes irreparable harm warranting injunctive relief (MS003 MOL at 19-20; MS005 MOL at 16-18; MS003 Reply at 6-10; MS005 Reply at 6-10). And, as for the balance of the equities, US Fire contends that the equities lie in its favor because, absent injunctive relief, US Fire will be deprived of the collateral it bargained for in the GAI, while the Cox cc-defendants would receive a windfall (MS003 MOL at 20-22; MS005 MOL at 18-19).
In opposition, the Cox cc-defendants first focus on irreparable harm, arguing that US Fire cannot establish this element because the harm over which it is making its application is not [*7]imminent, and, at any rate, it can recover the collateral should it prevail on its claim for specific performance (MS003 Opp at 11-16; MS005 Opp at 11-16). Separately, the Cox cc-defendants note that, although the GAI provides that there will be no adequate remedy of law, it does not indicate that failure to provide collateral will constitute irreparable harm (MS003 Opp at 13-14; MS005 Opp at 14). The Cox cc-defendants next address the issue of likelihood of success, arguing that (1) US Fire cannot assert a right to injunctive relief because its cause of action does not relate to the specific bonds at issue in its motion; (2) US Fire has failed to establish that the amount of collateral it seeks is reasonable; and (3) there are multiple predecessors-in-interest that may perform decommissioning that may ultimately result in US Fire not being called to perform the obligations set forth in the BOEM, UNOCAL, or BOEM II Claims (MS003 Opp at 16-21; MS003 Opp at 17-22). Finally, the Cox cc-defendants assert that the balance of equities lies in its favor because US Fire is seeking to tie up a significant amount of their funds by relying on tenuous claims (MS003 Opp at 21; MS005 Opp at 22).

 Discussion
"The purpose of a preliminary injunction is to maintain the status quo and prevent the dissipation of property that could render a judgment ineffectual" (1650 Realty Assocs., LLC v Golden Touch Mgt., Inc., 101 AD3d 1016, 1018 [2d Dept 2012]). It is a "drastic" remedy that "should be used sparingly" (McLaughlin, Piven, Vogel, Inc. v Nolan & Co., 114 AD2d 165, 172 [2d Dept 1986]). Thus, an injunction "will only be granted when the party seeking such relief demonstrates [1] a likelihood of ultimate success on the merits, [2] irreparable injury if the preliminary injunction is withheld, and [3] a balance of equities tipping in favor of the moving party" (1234 Broadway LLC v West Side SRO Law Project, Goddard Riverside Community Ctr., 86 AD3d 18, 23 [1st Dept 2011], citing Doe v Axelrod, 73 NY2d 748, 750 [1988]). If seeking a mandatory preliminary injunction, the movant must also show that "granting of relief is essential to maintain the status quo pending trial of the action" (Second on Second Cafe , Inc. v Hing Sing Trading, Inc., 66 AD3d 255, 264-265 [1st Dept 2009]). Whether to grant a preliminary injunction is "committed to the sound discretion of the motion court" (Harris v Patients Med., P.C., 169 AD3d 433, 434 [1st Dept 2019]).
Here, the court's analysis starts and ends with irreparable harm. In arguing that irreparable harm exists, US Fire largely focuses on the very existence of the BOEM, UNOCAL, and BOEM II Claims, as well as its accompanying collateral demands to the Cox cc-defendants (MS003 MOL at 16-19; MS005 MOL at 16-18). Critically, however, there has been no showing made on US Fire's application that, beyond the existence of the BOEM, UNOCAL, and BOEM II Claims and US Fire's collateral demands, there is any risk of imminent—rather than remote or speculative—harm (see Golden v Steam Heat, Inc., 216 AD2d 440, 442 [2d Dept 1995] ["the irreparable harm must be shown by the moving party to be imminent, not remote or speculative"]). For example, although US Fire can readily identify the claims that have been made against it and potential exposure that may arise thereunder (see Aguilar MS003 aff ¶¶ 16, 25-27; Aguilar MS005 aff ¶¶ 15-16), there is no showing on the present record that it has incurred, or will ultimately incur, any of the costs associated with those claims. Indeed, US Fire readily concedes that "it has not yet established reserves" for any of the claims (see MS003 MOL at 4; MS005 MOL at 5). Nor is there any contention that it has expended any funds, or will imminently be required to expend funds, to fulfill the obligations set forth in the BOEM, [*8]UNOCAL, or BOEM II Bonds.
Similarly, in the absence of any imminent requirement that it perform the Cox cc-defendants' obligations, US Fire has failed to establish that it cannot be fully compensated through an eventual final judgment directing the specific performance it seeks through its counterclaims (see Westchester Fire Ins. Co. v DeNovo Constr., Inc., 177 F Supp 3d 810, 813 [SD NY 2016] [holding that "the fact that [plaintiff] 'is contractually entitled' to 'pre-judgment relief' in the form of a set sum of money does not mean that a breach of that obligation always constitutes an irreparable injury"]). For instance, US Fire does not contend that a failure to receive collateral at this moment will render it insolvent, or that the Cox cc-defendants' funds will be transferred or dissipated in any manner so as to thwart US Fire's ability to eventually obtain collateral (cf. Abish v Northwestern Natl. Ins. Co. of Milwaukee, Wis., 924 F2d 448, 454 [2d Cir 1991] [denying motion for quia timet and exoneration relief because [defendant's] only complaint seems to be that it was compelled to honor the surety agreement"]). Rather, it appears that, by pursuing the full penal sum of each of the at-issue bonds, US Fire's motions "seek[] [] easily quantifiable monetary award[s]," and thus it "fails to establish extreme or very serious and irreparable harm" (see Ins. Co. of the State of Pa. v Lakeshore Toltest JV, LLC, 2015 WL 8488579, at *2 [SD NY, Nov. 30, 2015, 15 Civ. 1436 (ALC)] [denying motion for preliminary and permanent injunction arising from defendant's failure to collateralize plaintiff pursuant to certain surety bonds]; DeNovo Constr., 177 FSupp3d at 813 [SD NY 2016] [noting that, because "'specific performance' of a collateral deposit provision requires the payment of a set sum of money," the "fact that [plaintiff] may ultimately be entitled to specific performance does not govern its entitlement to a preliminary injunction"]).
To avoid this conclusion, US Fire heavily relies on the First Department's holding in Atlantic Specialty Ins. Co. v Landmark Unlimited, Inc. (214 AD3d 472 [1st Dept 2013]) for the broad proposition that "as a matter of law and without any qualification, 'a surety will sustain irreparable harm when its indemnitors default on their obligation to deposit collateral security'" (MS003 Reply at 7 [emphasis added]). But nothing in Landmark (or, for that matter, in any of the other cases cited by US Fire in its motions) stands for such a sweeping proposition. Nor could it. That is because, even if a failure to comply with US Fire's collateral demands may establish a basis for its specific performance claim, "[t]he requirements for the grant of a preliminary injunction are more stringent than those for specific performance" (see DeNovo Constrs., 177 F Supp 3d at 813). To hold otherwise would be to essentially obviate the requirement that a surety make any type of showing of irreparable harm to establish its entitlement to the drastic remedy of a preliminary injunction (see Firemen's Ins. Co. of Newark, New Jersey v Keating, 753 F Supp 1146, 1151 [SD NY 1990] [rejecting "per se rule that would eliminate the crucial 'irreparable harm' branch of the test for preliminary injunctions" where surety argued that it has established irreparable harm based on defendant's failure to comply with a cash collateral clause in indemnification agreement]).
At any rate, the record under which the First Department in Landmark declared that "a surety will sustain irreparable harm when its Defendants default on their obligation to deposit collateral security" is markedly different from the case at bar (see Landmark, 214 AD3d at 473). For example, the surety in Landmark had already posted a reserve in the amount of the full penal sum of the bonds for which it sought collateral from defendant (NYSCEF # 212 — Affidavit of Jennifer M. Whritenour [submitted before trial court in Atlantic Specialty Insurance Company v Landmark Unlimited Inc. et al., 650912/2022). But here, as noted above, US Fire has concededly [*9]"not yet established reserves" for any of the at-issue claims under the BOEM, UNOCAL, or BOEM II Bonds, and there is no indication that it plans to do so either (see MS003 MOL at 4; MS005 MOL at 5).
And as another point of distinction, the defendants in Landmark specifically agreed that "failure to deposit collateral as requested by plaintiff 'shall cause irreparable harm to [plaintiff] for which it has no adequate remedy at law, and [plaintiff] shall be entitled to injunctive relief for specific performance of such obligation'" (Landmark, 214 AD3d at 473; cf. also Colonial Sur. Co. v Eastland Constr., Inc., 2009 WL 2440307, at *1 [Sup Ct, NY County, July 30, 2009], affd as modified 77 AD3d 581 [1st Dept 2010] [granting preliminary injunction directing defendants to immediately deposit collateral where indemnification agreement provided that plaintiff "shall be entitled to injunctive relief for specific performance of the obligation [of the Indemnitor] to deposit with Surety the sum demanded as collateral security and hereby expressly waive any claims or defenses to the contrary"]). In the GAI, however, the Cox cc-defendants only agreed that "Surety will have no adequate remedy at law should Defendants fail to post any collateral required herein and [] that Surety is entitled to specific performance of the obligation to post collateral" (GAI ¶ 3). To be sure, the lack of an adequate remedy may suffice for purposes of establishing a claim for specific performance (see BIB Constr. Co. v Fireman's Ins. Co. of Newark, N.J., 214 AD2d 521, 522-524 [1st Dept 1995] [recognizing that "[t]he obligation to make the deposit is subject to enforcement by specific performance" because "[t]he damage resulting from the failure to give security is not ascertainable, and the legal remedy is therefore inadequate"]). But it does not follow that any such harm is, a fortiori, irreparable (see LDC USA Holdings, Inc. v Taly Diamonds, LLC, 121 AD3d 529, 530 [holding that "[c]ontrary to plaintiff's contention, the provision in the operating agreement entitling a party to specific performance in the event of the other's breach does not render the alleged harm irreparable"]).
US Fire's reliance on Everest Reinsurance Co. v New Style Contractors, Inc. (2024 WL 3243273 [Sup Ct, NY County, June 25, 2024]) is similarly misplaced. It is true that, in Everest, this court held that the plaintiff had established irreparable harm arising from defendant's failure to deposit collateral security with plaintiff (Everest Reinsurance, 2024 WL 3243723 at *1). There are, however, key distinctions between the facts at issue in Everest and this case that cut against a finding of irreparable harm here. For instance, as this court noted in Everest, defendants readily conceded that they could not provide the collateral requested due to financial hardship (2024 WL 3243723 at *1; see also NYSCEF # 219 ¶ 17). Here, conversely, in seeking a preliminary injunction in connection with the BOEM, UNOCAL, and BOEM II Claims, US Fire does not allude any such financial hardship, inability to provide collateral, or risk of asset dissipation on the part of the Cox cc-defendants. Furthermore, as the Cox cc-defendants note in opposition, plaintiff in Everest had already incurred at least $2 million in losses to finalize the completion of the at-issue construction process, and it anticipated an additional $1 million in losses that necessitated its imposition of a $3 million reserve (NYSCEF # 213 at tr 5:4-14). In this case, by contrast, although US Fire can point to claims sent to it and a potential total exposure arising out of those claims, it has not identified any imminently threatened or actually incurred costs (Aguilar MS003 aff ¶¶ 14-16, 18, 24-27, 29; Aguilar MS005 aff ¶¶ 14-16; BOEM Ltr at 1; UNOCAL Ltr at 1; BOEM II Ltr at 1).
In sum, although there are certainly facts that could exist that would warrant a different conclusion, here, based on the present record before the court, US Fire has failed to carry its burden of establishing irreparable harm based on the Cox cc-defendants' failure to deposit [*10]collateral as required under the GAI. Accordingly, its two motions for a preliminary injunction are denied. The court has considered US Fire's remaining contentions on this issue and finds them unavailing.

 Conclusion
For the foregoing reasons, it is hereby
ORDERED that US Fire's motion for a preliminary injunction in connection with the BOEM and UNOCAL Bonds (MS003) is denied; and it is further
ORDERED that US Fire's motion for a preliminary injunction in connection with the BOEM II Bond (MS005) is denied; and it is further
ORDERED that the Cox cc-defendants are to serve a copy of this order together with a notice of entry upon US Fire and the Clerk of the Court within 10 days of this order.
DATE 3/21/2025
MARGARET A. CHAN, J.S.C.

Footnotes

Footnote 1:US Fire refers to this as its "Claim Right" under the GIA.

Footnote 2:US Fire refers to this as its "Place-in Funds" or "PIF" right

Footnote 3:The BOEM Bond covers leases with various predecessors-in-interest (NYSCEF # 221 — Watson MS003 aff ¶¶ 7-17; NYSCEF #s 223-233).

Footnote 4:The UNOCAL Bond covers one lease with six predecessors-in-interest (Watson MS003 aff ¶ 6; NYSCEF # 222).

Footnote 5:The BOEM II Bond is an areawide bond that is meant to cover all of Cox Oil Offshore's leasehold properties, and it has various extant predecessors-in-interest (NYSCEF # 372 — Watson MS005 aff ¶¶ 5-6).